## [No. 3493.]

### F. E. Trimble *v.* The State.

1. Theft — Principal Offender — Fact Case. — Appellant was indicted and convicted as a principal offender in the perpetration of a felonious theft of money. The proof showed that he was not present when and where the money was stolen, and the only evidence of his complicity in the taking of the money was the fact that he persuaded the owner to accompany him to a neighbor's house, and the money was stolen from the owner's house by one M. while the owner and the appellant were at the neighbor's. Some weeks after the theft the appellant admitted that he had received from M. some of the stolen money, but he made no admission tending to implicate himself in the taking of the money from the house. *Held*, that this state of proof does not sustain the conviction of appellant as a principal in the theft.
2. Pleading. — When the inculpatory evidence in a theft case may raise a question whether the accused is guilty of theft or of receiving stolen property, knowing it to be stolen, a count for the latter offense should be inserted in the indictment.

Appeal from the District Court of Hill. Tried below before the Hon. J. M. Hall.

The conviction in this case was had under an indictment which charged the appellant as a principal in the theft of $126.75, the property of W. G. Finley, in Hill county, Texas, on the 23d day of April, 1884. A term of two years in the penitentiary was the punishment assessed against the appellant.

W. G. Finley was the first witness for the State. He testified, in substance, that the defendant, who was his brother-in-law, came to his house on the night mentioned in the indictment and proposed to him to go to Newberry's house, where there was to be some performance by a spiritualist. Witness and his wife left home and

went to Newberry's with defendant and his wife, having locked the front but not the back door. During their absence witness's house was entered, his trunk broken open, and $126.75 taken therefrom. Defendant and his wife were with the witness and his wife until they returned from Newberry's. Witness did not know who stole the money. Ninety-five dollars of the stolen money was restored to witness by Deputy Sheriff Wilson, who reported that he recovered a part of it from the defendant and a part from Bill McMillan, who was also under indictment for the same offense.

In addition to his testimony as summarized in the opinion, G. W. Newberry testified that the defendant and his wife, and Finley and his wife, came to his, Newberry's, house together on the night of the spiritualist's entertainment, and left there together, and that defendant did not leave his house any time after his arrival until Finley and his wife left. Defendant returned that night and reported the burglary at Finley's house, and witness got one Ford, who was at his house, to go with him to investigate the matter and institute search. Witness circulated a false report that he saw a tramp in the neighborhood on the evening preceding the burglary, for the purpose of throwing the real perpetrators of the crime off their guard. On the morning after the burglary, witness examined Finley's premises for tracks, and found the track of a man leading from the place of McMillan to that of Finley, and from Finley's back to McMillan's, and that from the peculiar manner in which the heel of the boot which made the track was run down, he knew the track to be that of McMillan. Defendant some time afterwards came to witness and asked him if he found any tracks. Witness told him that he had, and where he found them, but did not tell him whose tracks they were. Defendant said that he made those tracks when he went to Finley's on the day before the burglary. Witness, however, knew that those tracks were not made by the defendant. Defendant was not cautioned when he returned the money, and said that he got it from McMillan.

Butler and Wilson corroborated the witness Newberry as to the incidents of the arrest of defendant, the search of his house, the recovery of the money, and the acts and declarations of the defendant. Wilson stated in addition that after the arrest of the defendant he summoned other parties to go with him to arrest McMillan. They arrested him and recovered some money from him which he said was a part of Finley's money.

Mrs. Newberry, Mrs. Trimble and Mrs. Finley testified, for the defense, that the defendant was at Newberry's house on the night

of the burglary from the time that he arrived there until he left with Finley and wife, after the spiritualistic performance.

Mrs. McMillan, the wife of the party indicted for the same offense, testified in substance, for the defense, that her husband brought with him to Hill county, Texas, about $120, which he obtained from various sources, of which money he, McMillan, loaned the defendant $50, on or about May 10, 1884. In answer to the direct question she denied that, at W. G. Finley's house, in Hill county, Texas, on the 18th day of May, 1884, in the presence of Mrs. Newberry and Mrs. Finley, she said that Bill McMillan, her husband, stole that money from Finley, and that she had tried to get him to return it, or let her have it so that she might drop it where it could be found. Mrs. Newberry and Mrs. Finley, in rebuttal, testified for the State that Mrs. McMillan did make the declaration imputed to her, at the time and place indicated.

The motion for new trial raised the questions discussed in the opinion.

. *J. M. Johnson*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

Hurt, Judge. This is a conviction for the theft of money, the property of W. G. Finley. The only question presented in the record, and demanding notice, is,—do the facts warrant the conviction of appellant as a *principal* in the theft?

On the night of the theft of the money, the defendant requested Finley to go with him to G. W. Newberry's to witness a spiritualistic performance. Finley, his wife, defendant and his wife went from the house of Finley, together, stayed together, and returned together,—appellant being at Newberry's all the while. While these parties were at Newberry's, witnessing the performances of the man of spirits, some one, from a trunk in Finley's house, spirited away the money. The theft occurred on the night of the 23d of April, 1884.

On the 15th day of May, nearly a month after the theft, with a search warrant, Tom Wilson, Joe Butler and Newberry went to search defendant's and McMillan's houses. In Newberry's testimony will be found, clearly stated, the inculpatory facts against defendant. He says that, "on the 15th day of May, 1884, Tom Wilson, deputy sheriff of Hill county, Texas, summoned him and Joe Butler to go with him to search the houses of defendant and Bill McMillan (indicted for the same offense); that said Wilson had a

search warrant to search both of the houses of defendant and said McMillan, but did not have any warrant of arrest for the defendant Trimble; but did have such a warrant to arrest said McMillan. They first went to the defendant Trimble where he was plowing in his field, and there they arrested said Trimble, without any warrant. They told defendant they had a warrant to arrest him and to search his, defendant's, house. They arrested defendant. Witness Newberry and Joe Butler took charge of defendant Trimble and carried him to his, defendant's, house, and told defendant they had a search warrant to search his (defendant's) house. The witness Newberry told defendant they had just seen Bill McMillan, and that he, said McMillan, had given the whole thing away, and the best thing for him, defendant, to do would be to acknowledge the offense and turn State's witness, and thereby avoid conviction. The witness stated that he was honest in telling defendant to do that, as he believed at the time that the defendant could do it and save conviction. And the witness here stated that he told an untruth, for that, he said, they had not seen Bill McMillan up to that time. He stated that Tom Wilson, deputy sheriff, was armed with a six-shooter, and that Joe Butler had a shot-gun. They searched defendant Trimble's house closely, and could not find any money they were looking for, but Joe Butler placed a chair at a place in the house, and was in the act of getting upon it and looking or feeling on top of the plate of the house, when defendant said, "Joe, hold on, I will tell you a truth;" when Joe Butler said: "Very well; I am not in the habit of telling the truth myself, and would like to hear the truth." At this juncture the defendant Trimble said: "I have got some of the money," and he got up into the chair where Butler had placed it, and, reaching up with his hands on the plate of the house, took down a twenty-dollar gold piece and a five-dollar gold piece, and, handing it to Butler, said, "this is some of the money," saying at the time that he had gotten it from Bill McMillan; that said McMillan told him, defendant, that he had some money, and that he, McMillan, would divide with him if he, defendant, would not blow on him. The defendant then said that he had some more of the money, and if they would go with him he would get it, stating that while they were coming to the house he dropped a twenty-dollar bill in the corner of the fence. They went with the defendant and found the twenty-dollar bill in the corner of the fence. The money was turned over to Tom Wilson, the said deputy sheriff."

It will be observed at once that, if defendant be a principal in this theft, it is by reason of the fact that he and McMillan had

agreed to steal the money, and that, in pursuance of this agreement or conspiracy, defendant, in order that McMillan might succeed in getting the money, induced Finley and wife to leave their house by going over to their neighbor Newberry's to witness the performance of the spiritualist.

Now, if indeed there was such a conspiracy, and Finley and wife were thus induced to leave their house and property exposed to the thief McMillan, defendant would clearly be a principal offender, and could be prosecuted and convicted as such; for, having Finley and wife in charge at Newberry's, and thus leaving the way to the money clear and safe to McMillan, defendant would be acting together with McMillan at the very time of the theft, and hence would be a principal.

But the question here presented is: What evidence, what fact, in the record supports this theory of a conspiracy? We must not assume a theory. There must be no speculation in regard to this matter; we must have the proof. This proof may be furnished by facts occurring before, at the time of, and subsequent to, the theft. The record furnishes no fact of such conspiracy. At the time of the theft we have simply the fact that defendant requested Finley and his wife to attend the performance, and that they all went to Newberry's, leaving no one at Finley's. Now, whether this was in execution of his part of the conspiracy is so far left in doubt. This conduct may be perfectly consonant with innocence of any agreement with McMillan to steal the money of Finley. The mere fact, then, that he induced Finley and wife to leave their house on the night the money was stolen, in itself furnishes no proof of a conspiracy.

Do the subsequent facts sworn to by Newberry,— and there are none stronger against him in the record,— prove or tend to prove the conspiracy? His connection with the money, as developed by the evidence, and all that he said in relation thereto, are in perfect harmony with the theory that he received the money from McMillan, knowing it to have been stolen. Subject the statement of facts to the severest scrutiny, and we believe that there will not be a fact or circumstance sufficient to connect the defendant with this theft, only as a receiver. If defendant had a guilty connection with this offense, it is as clear as the noon-day sun that it was for receiving the money from McMillan, knowing that he had stolen it from Finley. Therefore it is astounding to us that a count for this offense was not inserted in the indictment.

It may be true that McMillan and defendant conspired together

to commit this theft, and that defendant acted his part when he prevailed upon Finley and wife to go over to Newberry's on the night of the theft. This, however, in our opinion, is simply speculation,— conjecture without proof.

Because the evidence does not support the conviction of defendant as a principal, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered June 26, 1885.]